```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

United States of America

    v.                                  Criminal No. 17-cr-196-JD
                                          Opinion No. 2020 DNH 084
William A. Bischoff


O R D E R

William Bischoff moves for compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A) due to health concerns related to the COVID-19 pandemic.[1] In support, he provides evidence of the likelihood of contracting COVID-19 while incarcerated and the risk he faces, due to his advanced age and hypertension, if he were to contract COVID-19. The government objects to his motion on the ground that he is not eligible for a reduction in his sentence, under the compassionate release statute.

---

[1] The court previously denied Bischoff's motions for compassionate release based on the effects of COVID-19, due to a lack of exhaustion of administrative remedies. The court granted Bischoff's motion for reconsideration, with the government's assent, to consider his motions on the merits. Therefore, the issue of administrative exhaustion is moot.

Background[2]

On March 9, 2018, Bischoff pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343 and willfully failing to file individual federal income tax returns in violation of 26 U.S.C. § 7203.  As part of the plea agreement, Bischoff acknowledged that from at least 2009 until September of 2017, he defrauded clients in twenty-six households through his financial advisory business.  His fraudulent scheme involved soliciting clients, many of whom were family friends, to give him substantial amounts of money to invest.  Instead of investing the money, Bischoff used significant amounts of the clients' money to pay his own personal expenses, make personal financial investments, and repay other investors.

He was sentenced to a prison term of 48 months.  He was also sentenced to pay restitution in the total amount of $6,216,291.31.  Judgment was entered on June 20, 2018.  At the current time, Bischoff's early release date is December 14, 2021.  In prior filings seeking relief from his sentence, Bischoff has made misrepresentations to the court about his sentence, his family responsibilities, and other matters.  Those requests were denied.

---

[2] Additional background information about Bischoff's criminal and procedural history is provided in the court's previous orders, document nos. 60, 68, and 70.

Bischoff is currently incarcerated at FMC Devens. The parties have provided supplemental briefing on the conditions at FMC Devens, Bischoff's medical condition, and his plan for release. Jonathan Hurtig, Chief United States Probation Officer, reviewed the filings and submitted a report.

On May 15, 2020, the court held a telephone conference with counsel for Bischoff, the AUSA representing the government, and Officer Hurtig. Counsel for Bischoff represented that eight inmates and two staff persons at FMC Devens have tested positive for COVID-19. In response, the government confirmed the new cases of COVID-19 at FMC Devens but argued that Bischoff is not at risk because he is housed in a different area of the facility and the facility is operating in lock down to avoid spreading the infection.

The government provided information from Bischoff's victims that they opposed reduction in his sentence because of the seriousness of his crimes. The victims have also reported that Bischoff's company, Genesis Investment Group, LLC, is still in existence. They are concerned that if released Bischoff will again engage in the same fraudulent schemes.

After the telephone conference, the court received notice that the Bureau of Prisons ("BOP") had issued a Supervision Release Plan to put Bischoff in home confinement for the

remainder of his sentence.  The BOP plan includes fourteen days of quarantine confinement at FMC Devens before release, with a tentative release date of June 5, 2020.  Counsel for Bischoff submitted an additional supplement to address the BOP plan.

At the court's request, Officer Hurtig submitted an additional report to address proposed conditions for supervised release, if the court were to grant compassionate release, to protect the public and to require Bischoff to remain under home confinement until December 14, 2021, the date on which his original sentence would be completed.  The court held a second telephone conference on May 18, 2020, to review the status of the case in light of the BOP's plan for home confinement and the conditions for supervised release proposed by Officer Hurtig, if the court were to grant compassionate release.

Subsequent to the telephone conference, counsel for Bischoff reviewed the conditions proposed by Officer Hurtig with Bischoff, and Bischoff has agreed to those conditions.  Counsel has submitted Bischoff's signed acknowledgement that he received, reviewed, and understands the conditions of supervised release.  Counsel for Bischoff signed the conditions of supervised release and filed a certificate that he reviewed the proposed conditions of release with Bischoff and that Bischoff had no objections.

## Standard of Review

The court may reduce a term of imprisonment based on a finding that "extraordinary and compelling reasons warrant such a reduction" and "after considering the factors provided in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A). The court also considers whether the requested "reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). The applicable policy statement provides considerations about the prisoner's age and health. U.S.S.G. 1B1.13.

A generalized risk of infection with COVID-19, by itself, is not enough to show extraordinary and compelling reasons for a reduction in sentence. United States v. Ramirez, 2020 WL 2404858, at *3-*4 (D. Mass. May 12, 2020); United States v. Mackenzie, --- F. Supp. 3d ---, 2020 WL 2104786, at *1-*2 (D. Mass. May 1, 2020). On the other hand, a combination of health and age factors that put a prisoner at a substantially higher risk due to COVID-19 along with a documented risk of the disease in the facility where the prisoner is incarcerated may demonstrate extraordinary and compelling reasons to reduce the prisoner's sentence. See, e.g., Ramirez, 2020 WL 2404858, at *9. Advanced age and hypertension are recognized as risk

factors for COVID-19.  See, e.g., United States v. Bray, 2020 WL 2494898, at *3 (E.D. Mich. May 14, 2020); Refunjol v. Adducci, 2020 WL 2487119, at *1-*2 (S.D. Ohio May 14, 2020); United States v. Zukerman, --- F. Supp. ---, 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020); United States v. Hull, 2020 WL 2475639, at *2-*3 (D. Conn. May 13, 2020).  Prison is also recognized as an environment that increases the likelihood of transmission of diseases including COVID-19.  See, e.g., United States v. Lopez, 2020 WL 2489746, at *3 (D.N.M. May 14, 2020); Ruderman v. Kolitwenzew, 2020 WL 2449758, at *3 (C.D. Ill. May 12, 2020).

## Discussion

Bischoff contends that his advanced age, seventy-nine years old, and hypertension put him at increased risk of contracting and not surviving COVID-19.  Because of the risks related to the COVID-19 pandemic, the BOP plans to have Bischoff serve the remainder of his sentence in home confinement, with a preliminary fourteen-day quarantine period at FMC Devens.  The government supports the BOP's plan and contends that Bischoff is not an appropriate candidate for compassionate release because of the nature of his crimes and the effect on his victims.

Under the BOP's plan, Bischoff's sentence remains the same, but the location where he serves the sentence would change from

FMC Devens to home confinement.  In his motion pursuant to § 3582(c)(1)(A), Bischoff seeks a reduction in his sentence to time served followed by supervised release.  Although based on different conditions and authority, the BOP plan and a reduction in sentence under § 3582(c)(1)(A), with the court-imposed conditions of supervised release, would have similar practical results.  See, e.g., United States v. Murphy, 2020 WL 2507619, at *4 (E.D. Mich. May 15, 2020) (discussing similarity of relief available through BOP and court).

    The significant difference between the two procedures is timing.  The BOP plan is not yet final and includes a fourteen-day quarantine period.  For that reason, Bischoff would spend several more weeks at FMC Devens.  If the court grants relief under § 3582(c)(1)(A) and reduces Bischoff's sentence to time served with supervised release under the conditions imposed by the court, he would leave FMC Devens as soon as can be arranged after the order issues.  In addition, the conditions of supervised release imposed by the court are specifically tailored to protect the public and to require Bischoff to remain in home confinement until December 14, 2021, the date on which he would have completed his original sentence.  See Appendix A.

    Because Bischoff is seventy-nine years old and has hypertension, he is in a high-risk category with respect to

7

COVID-19.  Bischoff's situation is evidenced by the fact that the BOP has issued a Supervision Release Plan to put him in home confinement.  Inmates and staff at FMC Devens have contracted COVID-19. While Bischoff is not in that part of the facility where persons have tested positive for COVID-19 and the facility is taking measures including lock down to contain the disease, this pandemic has proven difficult to contain even with careful attention to restrictions and public health.  As is noted above, prisons are recognized as environments that are particularly at risk for spreading COVID-19.  Given the combination of Bischoff's health risks and the presence of the disease at FMC Devens, Bischoff has shown extraordinary and compelling reasons that support a reduction in his sentence to time served to be followed by supervised release.

The court acknowledges and understands the opinion of the victims who do not believe that Bischoff should be granted compassionate relief.  He caused considerable hardship and suffering to them through his fraudulent schemes.  A longer time in custody at the BOP would be preferable both from the victims' and the court's perspectives.  However, the COVID-19 pandemic has created exceptional and unusual circumstances.

Rather than outright release, the court is requiring Bischoff to remain in home confinement for the same amount of

time he has remaining on his sentence and has imposed strict conditions on him during home confinement to protect the public and to restrict Bischoff's activities.  Bischoff's crime and the impact on his victims weigh in favor of careful supervision.  Although Bischoff was not convicted of a violent crime, he did defraud a large number of vulnerable people.  His suggestion in a prior motion that he should be allowed to return to work raised a concern that he did not understand the criminal nature of his activities or the serious impact his crime has had on his victims.[3]

    Weighing the relevant factors, the risk that Bischoff faces from COVID-19 combined with his age and health condition tips the balance toward reducing his sentence to time served, to be followed by supervised release subject to the conditions set forth in Appendix A.  Bischoff is not a danger to the public unless he resumes his fraudulent schemes and activities.  The conditions of supervised release are crafted to provide oversight and deterrents to prevent Bischoff from engaging in criminal activity and to protect the public.

---

    [3] His victims have reported to the government that Bischoff's company, Genesis Investment Group, LLC, is still in existence, despite Bischoff's conviction and incarceration.

Conclusion

For the foregoing reasons, the defendant's motions for release under § 3582(c)(1)(A) (documents nos. 62, 67, and 73) are granted as follows:

1) The defendant's sentence will be reduced to time served.

2) The defendant will be placed on special supervised release until December 14, 2021, which is equivalent to what his discharge date would have been from the BOP, during which time he will remain in home confinement.

3) Following the term of special supervised release, the defendant will be placed on supervised release for a term of three years.

4) During these terms of special supervised release and supervised release, the defendant shall be subject to the Supervision Conditions as set forth in Appendix A.

5) The BOP shall release the defendant immediately following processing.

6) The court recommends that the BOP screen the defendant for COVID-19 within twelve hours of his release, and if he is displaying symptoms consistent with COVID-19, test the defendant

and share the results with the United States Probation Office in the District of New Hampshire.

    7) The court will issue an amended criminal judgment.

SO ORDERED.

*[signature: Joseph A. DiClerico, Jr.]*
Joseph A. DiClerico, Jr.
United States District Judge

May 19, 2020

cc: Counsel of record.

**APPENDIX A**

**SUPERVISION CONDITIONS:**

Within seventy-two hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the district to which the defendant is released.

While under supervision, the defendant must comply with the standard conditions that have been adopted by this court, and the following mandatory conditions:

The defendant must not commit another federal, state, or local crime.

The defendant must not unlawfully possess a controlled substance.

The drug testing condition required by 18 U.S.C. § 3563(a)(5) is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.

The defendant must cooperate in the collection of DNA as directed by the probation officer.


In addition, the defendant must comply with the following special conditions:

1.  The defendant must self-quarantine in an approved residence during the first fourteen days of his supervised release.

2.  The defendant is restricted to his residence at all times until December 14, 2021, except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer. During the first ninety days, the defendant will be monitored by Location Monitoring using Radio Frequency, after which the defendant will continue to be monitored using the location monitoring technology at the discretion of the probation officer. The defendant must follow the rules and regulations of the location monitoring program. The defendant must pay for the cost of the program to the extent he is able, as determined by the probation officer.

3. The defendant must provide the probation officer with access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the Financial Litigation Unit of the United States Attorney's Office.

4. The defendant must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

5. The defendant must apply all monies received from income tax refunds, lottery winnings, judgments, and/or any other anticipated or unexpected financial gains to the outstanding court-ordered financial obligation.

6. If the judgment imposes a financial penalty, the defendant must pay the financial penalty in accordance with the Schedule of Payments sheet of this judgment. The defendant must also notify the court of any changes in economic circumstances that might affect the ability to pay this financial penalty.

7. The defendant must not engage in an occupation, business, profession, or volunteer activity that would require or enable him to act as a fiduciary or in any other capacity as a financial trader or investor through any medium (to include in person, through mail, telephone, or on-line) without the prior approval of the probation officer.

8. The defendant must not work in any type of employment without the prior approval of the probation officer.

9. The defendant must cooperate fully with the probation officer and others in marshaling his assets and disposing of the same in order to make restitution to the victims, and shall appoint such agents as may be necessary to accomplish this and execute such documents.


10. The defendant must not communicate, or otherwise interact, with any victim of his offense of conviction, either directly or through someone else, without first obtaining the permission of the probation officer.

11. The defendant must submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United

States Probation Officer.  Failure to submit to a search may be grounds for revocation of release.  He must warn any other occupants that the premises may be subject to searches pursuant to this condition.  The probation officer may conduct a search under this condition only when reasonable suspicion exists that the defendant has violated a condition of supervision and that the areas to be searched contain evidence of this violation.  Any search must be conducted at a reasonable time and in a reasonable manner.

      12.  The defendant must submit his computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search.  He must warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition.  A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation.  Any search will be conducted at a reasonable time and in a reasonable manner.

      13.  The defendant must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) the defendant uses.  The defendant must pay for the cost of this monitoring software to the extent he is able, as determined by the probation officer.

      14.  To ensure compliance with the computer monitoring condition, the defendant must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring.  These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation.  The defendant must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.